Rollins, S.
The probate of the paper propounded in this court as the last will and testament of Daniel J. Stack, deceased, is opposed on various grounds by Thomas Stack, his father.
The right of Thomas Stack to make this opposition is assailed by Ella M. Stack, who is the proponent of the disputed paper, and is named therein as its executrix and as universal devisee and legatee of decedent’s estate. She claims to be the widow of decedent, and the mother of one Helena Stack, an infant of whom decedent was the father, which infant, as the proponent claims, became entitled at its father’s death, in the event that its father should be discovered to have died intestate, to take as his only next of kin and heir-at-law, his entire estate, except such share therein as could be justly claimed by the proponent as his widow.
The contest over the issues raised by the petition for probate, and the objections thereto, has been postponed to await the result of an inquiry whether Helena Stack is the “lawful child” of the decedent within the meaning of that word as used in our statutes of descent and of distribution.
Evidence has been introduced tending to establish the following facts: That in the year 1878 the decedent was lawfully married to one Eva L. Nichwitz; that thereafter the two lived together as husband and wife for several years; that they then separated; that no children were born of their marriage; that in the year 1882, the decedent, being still the husband of the said Eva, became a resident of the state of Connecticut, and in that state cohabited with the proponent; that in March, 1883, at a place called Sound Beach, in the state of Connecticut, the proponent gave birth to a child, whereof decedent was the father; that such child survived decedent, and is the same person referred to in the petition for probate herein as Helena Stack; that in April, 1883, the said Eva L. Stack commenced, in the superior court of the city of New York, proceedings for an absolute divorce from the decedent on account of his adultery with the proponent; that in November, 1883, such divorce was, for that cause, decreed by said court; that by said decree the decedent was prohibited from remarrying in the lifetime of said Eva L. Stack; that in December, 1883, while said Eva was yet living, the decedent and the proponent, being together in the city of Philadelphia, in the state of Pennsylvania, were married by a magistrate of said city in *418 accordance with the marriage laws of said state; that the decedent and the proponent straightway returned to the state of Connecticut, and there continued to reside until the decedent’s death in April, 1885.
The would-be contestant will hereafter be afforded opportunity, if he desire it, to present evidence tending to show that the decedent was not in fact the father of Helena Stack; but it will be assumed for the present purposes that the evidence tending to establish his paternity will not be overthrown.
Upon the facts above stated, two questions arise: First. Should the Pennsylvania marriage be upheld for the purposes of this proceeding as lawful and valid in the state of New York?
Second. Did such marrrige legitimate the said Helena Stack, so as to make her upon decedent’s death his next of kin and heir at law not only in Pennsylvania, but also in the states of Connecticut and New York?
It has been the settled law of New York ever since the decision of the court of appeals in Van Voorhis v. Brintnall (86 N. Y., 18), that despite the provision in a decree of divorce granted by a court of this state on the ground of the adultery of one of the parties, prohibiting such party from marrying during the lifetime of the other, a marriage entered into by such party in another state, if valid there, is valid here, even though the parties to such marriage be residents of this state and even ■ though they have gone to such other state for the very purpose of evading the laws of New York. Thorp v. Thorp, 90 N. Y., 602; Moore v. Hegeman, 92 N. Y., 521.
No proof has been submitted in the present case as to the existence of any restrictive provisions in the law of Pennsylvania, because of which decedent’s marriage with the proponent was not valid in that state; but counsel for contestant quotes in his brief, a section of a Pennsylvania statute which declares that: “The husband or wife who shall have been guilty of the crime of adultery shall not marry the person with whom the said crime was committed during the life of the former wife or husband.”
This provision forms a part of a statute which relates entirely to divorces decreed by the courts of Pennsylvania, in accordance with the laws of that state. It affects only such persons as have been parties to divorce proceedings in the tribunals of that state, and has no application to persons whose adulterous relations have formed the basis for decrees of divorce outside the limits of Pennsylvania. Van Voorhis v. Brintnall (supra); Dorsey v. Dorsey, 7 Watts, 349; Bullock v. Bullock, 122 Mass., 3; Hill v. Hill, 42 Penn. St., 198, 204.
*419 I hold, therefore, that the marriage of decedent and proponent was valid in Pennsylvania, and as it was not contrary to the laws of nature, and is not shown to have been rendered void by any positive law of New York or of Connecticut, it must be treated as valid in New York and as valid in Connecticut.
The testimony shows that there is a statute of Pennsylvania, whereby a child born out of lawful wedlock is made legitimate by the marriage of its parents. The statute is as follows:
“In any and every case where the father and mother of an illegitimate child or children shall enter into the bonds of lawful wedlock and cohabit, such child or children shall thereby become legitimate, and enjoy all the rights and privileges as if born during the wedlock of their parents.”
A similar provision is shown to have been, ever since June, 1876, upon the statute book of Connecticut. It declares that:
“Where the parents of children born before marriage afterwards intermarry and recognize such children as their own, such children shall inherit equally with their other children, under the statute of distributions, and shall be legitimate.”
It was held by the court of appeals, in Miller v. Miller (91 N. Y., 315), that when an illegitimate child has, by the subsequent marriage of its parents, become legitimate by virtue of the laws of the state or country where such marriage has taken place, and where its parents have been domiciled, it is thereafter legitimate everywhere.
Miller v. Miller would be decisive of the case at bar if, at the time the decedent and proponent intermarried, they had been domiciled in the state of Pennsylvania. They were, in fact, domiciled at that time in the state of Connecticut, but in that state the legitimation of a child born out of wedlock could be affected, precisely as in Pennsylvania by the subsequent marriage of its parents, provided only that the parents thereafter recognized the child as legitimate. Such recognition has been established in the case at bar.
I hold, therefore, that the infant, Helena Stack, from the time of the intermarriage of her parents, became their legitimate child in the state of Connecticut, and that her claim to be decedent’s next of kin and heir-at-law must here be upheld.
As the case now stands, therefore, decedent’s father seems to have no interest in the estate; he will, however, as has been already stated, be permitted to show, if he can, that the decedent and Helena Stack were not father and daughter.